ALBERT I. ADDISON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Addison v. Commissioner
Docket No. 7785-78.
United States Tax Court
T.C. Memo 1979-317; 1979 Tax Ct. Memo LEXIS 207; 38 T.C.M. (CCH) 1226; T.C.M. (RIA) 79317; August 15, 1979, Filed Albert I. Addison, pro se. Karl D. Zufelt, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: Respondent determined a deficiency of $2,088 in petitioner's Federal income tax for the year 1976. Due to a concession by petitioner, the only issue presented for decision is whether section 402(e)(4)(A)(ii), [1] which sets forth one of four alternative conditions which a distribution from *209 a qualified pension plan must satisfy in order to receive the special tax benefits accorded lump-sum distributions by section 402(e)(1), creates a classification which violates the due process clause of the Fifth Amendment of the United States Constitution. This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and joint exhibits are incorporated herein by this reference. The pertinent facts are summarized below. Albert I. Addison (petitioner) resided in Los Angeles, California, when he filed the petition in this case. He has been employed by Norris Industries, Inc. since 1965. In 1976 the company terminated its employee retirement plan in which petitioner had been a participant. As a result of the termination, petitioner received a single distribution payment during 1976 in the amount of $11,909.58. None of this amount represented contributions paid to the plan by petitioner as an employee. At the time of the distribution petitioner was 34 years *210 old and was not disabled. Because he did not transfer any portion of the distribution to an individual retirement account or to another employee plan qualified under section 401, he was unable to use the rollover provisions of section 402(a)(5) to defer tax on the distribution. When petitioner reported the distribution in his 1976 income tax return, he computed the tax on that amount by applying the 10-year averaging provisions of section 402(e)(1). Respondent, however, determined that the distribution did not qualify as a lump-sum distribution under section 402(e)(4) because petitioner had not reached the age of 59-1/2 as of the payment date. Therefore, respondent claims that petitioner must compute his tax on the distribution without regard to the 10-year averaging rules. Section 402(a)(1) [2] provides as a general rule that any amounts distributed to an employee from a pension trust qualified under section 401(a) will be taxable to him in the year of distribution. If, however, the distribution qualifies as a lump-sum distribution under section 402(e)(4), then the recipient is entitled to use the 10-year averaging provisions of section 402(e)(1). [3] Section 402(e)(4)(A) defines *211 a lump-sum distribution as follows: Lump sum distribution.--For purposes of this section and section 403, the term "lump sum distribution" means *212 the distribution or payment within one taxable year of the recipient of the balance to the credit of an employee which becomes payable to the recipient-- (i) on account of the employee's death, (ii) after the employee attains age 59 1/2, (iii) on account of the employee's separation from the service, or (iv) after the employee has become disabled (within the meaning of section 72(m)(7)) from a trust which forms a part of a plan described in section 401(a) and which is exempt from tax under section 501 or from a plan described in section 403(a). * * * The payment to petitioner clearly does not qualify under the statute because at the time of payment he was (1) still alive, (2) only 34 years old, (3) still employed by the company, and (4) not disabled. Petitioner, however, contends that section 402(e)(4)(A)(ii) is invalid because it discriminates in favor of older employees in violation of the Fifth Amendment's due process clause. We disagree. In United States v. Maryland Savings-Share Ins. Corp.,400 U.S. 4, 6 (1970), the Supreme Court set forth the following standard for judicial review of classifications within the Internal Revenue Code: Normally, *213 a legislative classification will not be set aside if any state of facts rationally justifying it is demonstrated to or perceived by the courts. McDonald v. Board of Election Comm'rs,394 U.S. 802, 809 (1969); McGowan v. Maryland,366 U.S. 420, 426 (1961); Standard Oil Co. v. City of Marysville,279 U.S. 582, 586-587 (1929). * * * [Emphasis added.] See also Brushaber v. Union Pac. R.R.,240 U.S. 1, 24-25 (1916); Guest v. Commissioner,72 T.C. No. 67 (August 3, 1979); Bryant v. Commissioner,72 T.C. No. 66 (August 3, 1979); Keeler v. Commissioner,70 T.C. 279 (1978); Jennemann v. Commissioner,67 T.C. 906 (1977). [4] We must determine, therefore, whether some rational basis exists for the age classification created by section 402(e)(4)(A)(ii). *214 Both the facts and issue of the present case are strikingly similar to those which we considered in Jennemann v. Commissioner,supra. That case dealt with a taxpayer who received a lump-sum distribution upon the termination of an employee profit-sharing plan. He reported a portion of the payment as long-term capital gain under the authority of section 402(a)(2). That section as it read prior to amendment in 1974 required that the distribution be "on account of the employee's death or other separation from the service, or on account of the death of the employee after his separation from the service" in order to qualify for capital gain treatment. Since the taxpayer had not retired or otherwise separated from service, respondent determined that the entire amount of the distribution was ordinary income. The taxpayer argued that the statute violated the Fifth Amendment because there was no rational basis for denying capital gain treatment when the distribution is made on account of the termination of a qualified plan. We disagreed and offered the following reasons (67 T.C. at 910): We are able to perceive a rational basis for granting preferential *215 capital gains treatment only to employees who retire or separate from service, and their widows, i.e., that Congress could have determined that these individuals are generally less able to pay taxes and generally more dependent on their pensions for a livelihood than employees who continue in their employment. * * * We think that reasoning is equally applicable here. The legislative history of section 402(e)(1) indicates that the 10-year averaging provisions were primarily intended to benefit individuals who receive lump-sum distributions atretirement.[5] An individual who has reached the age of 59-1/2 is usually very close to his normal retirement date. To be saddled with an unexpected tax burden at that point in his life could wreak havoc on his financial planning for retirement. On the other hand, Congress could have determined that younger individuals like petitioner who have many productive years ahead of them are not in need of preferential tax treatment for termination distributions. Such a distinction, we think, constitutes a rational basis for the challenged classification. *216 Accordingly, we hold that section 402(e)(4)(A)(ii) does not violate the due process clause of the Fifth Amendment. To reflect our resolution of the disputed issue and a concession by petitioner, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise indicated.↩
2. SEC. 402. TAXABILITY OF BENEFICIARY OF EMPLOYEES' TRUST. (a) Taxability of Beneficiary of Exempt Trust.-- (1) General rule.--Except as provided in paragraphs (2) and (4), the amount actually distributed or made available to any distributee by an employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed or made available, under section 72 (relating to annuities). The amount actually distributed or made available to any distributee shall not include net unrealized appreciation in securities of the employer corporation attributable to the amount contributed by the employee. Such net unrealized appreciation and the resulting adjustments to basis of such securities shall be determined in accordance with regulations prescribed by the Secretary or his delegate. ↩
3. In addition, characterization of the payment as a lump-sum distribution may allow the recipient to treat a portion of the payment as capital gain under section 402(a)(2).↩
4. We realize that the Fourteenth Amendment guarantee of equal protection has been held applicable to the United States through the Fifth Amendment due process clause. Bolling v. Sharpe,347 U.S. 497 (1954); Shapiro v. Thompson,394 U.S. 618 (1969). Under equal protection analysis, a classification in a Federal statute is subject to strict scrutiny if it interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. Massachusetts Bd. of Retirement v. Murgia,427 U.S. 307, 312 (1976); San Antonio School District v. Rodriguez,411 U.S. 1, 16-17↩ (1973). Neither of these circumstances is present here. Accordingly, the rationality test is the appropriate standard for review.
5. The accompanying committee report states that "the 10-year averaging is provided in order to give roughly the equivalent of what the tax would be were the individual to live 10 years after retirement and receive his interest in the plan over that period." H. Rept. No. 93-779 (1974), 1974-3 C.B. 389↩.